Appeal No. 22-4015

IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

ANNETTE HENRIE,

Appellant/Plaintiff

v.

CARBON SCHOOL DISTRICT,

Appellee/Defendant
_____

Appeal from the United States District Court
for the District of Utah, Case No. 2:19-cv-00723
Judge Dale A. Kimball

_____

APPELLANT'S OPENING BRIEF
ORAL ARGUMENT REQUESTED
_____

Andrew W. Stavros
STAVROS LAW P.C.
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
andy@stavroslaw.com

*Attorneys for Annette Henrie*

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES .................................................................1

JURISDICTIONAL STATEMENT ...................................................................1

INTRODUCTION ............................................................................................1

STATEMENT OF THE ISSUE........................................................................2

STATEMENT OF THE CASE .........................................................................3

STATEMENT OF FACTS ...............................................................................4

SUMMARY OF ARGUMENT ........................................................................7

STANDARD OF REVIEW ..............................................................................9

ARGUMENT ...................................................................................................10

   I.  HENRIE'S SEPTEMBER 2015 COMPLAINT WAS A PROTECTED ACTIVITY .................................................................................................10

   II.  HENRIE WAS SUBJECT TO MATERIALLY ADVERSE ACTIONS AS A RESULT OF HER COMPLAINTS ....................................................12

   III. SUMMARY JUDGMENT IS NOT APPROPRIATE ON HENRIE'S RETALIATION CLAIMS .........................................................................15

CONCLUSION ...............................................................................................16

STATEMENT REGARDING ORAL ARGUMENT ........................................16

ATTACHMENTS............................................................................................19

   I.  MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FILED ON JANUARY 31, 2022...19

   II.  JUDGMENT IN A CIVIL CASE FILED ON JANUARY 31, 2022 ............45

# TABLE OF AUTHORITIES

**Cases**

*Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) ...............................8

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006)...................8

*Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003) 10

*Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)....................7, 10

*Hunt v. Cromartie*, 526 U.S. 541, 552-553 (1999)....................................................9

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) ........................9

*Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) 9

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)..........9, 15

*Robbins v. Jefferson Cty. Sch. Dist.*, 186 F.3d 1253, 1258 (10th Cir. 1999) ......7, 10

*Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009) .......................10

*Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2011) .............9, 15

*Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987 (10th Cir. 2011) ........................9

**Statutes**

20 U.S.C. §§ 1681, *et seq.*...........................................................................................1

28 U.S.C. § 1291 ...........................................................................................................1

42 U.S.C. § 1983 ...........................................................................................................1

42 U.S.C. § 2000e-5(f)..................................................................................................1

**Rules**

Fed. R. Civ. P. 56(a)......................................................................................................9

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

Appellant/Plaintiff Annette Henrie brought this civil action against her form employer, Appellee/Defendant Carbon School District, alleging claims of sexual harassment, discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1983 of the Civil Rights Act ("Section 1983"), and Title IX of the Education Amendments Act of 1972 ("Title IX") in the United States District Court, District of Utah. The District Court exercised jurisdiction pursuant to 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 1983, and 20 U.S.C. §§ 1681, *et seq*.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because it seeks review of a final decision of the district court that disposed of all of Appellant's claims. The January 31, 2022 "Memorandum Decision and Order Granting Defendant's Motion for Summary Judgment" and "Judgment in a Civil Case" dismissed all of Appellant's claims. Appellant timely filed her Notice of Appeal on March 2, 2022.

## INTRODUCTION

This claim and subsequent appeal arose from sexual harassment, discrimination, and retaliation experienced by Appellant in the form of failing to

1

promote her, failing to prevent further harassment, failing to provide her with equal pay, and retaliation on the basis of Appellant's gender. Appellee argued, in general, that Appellant's claims were not valid or supported and that the District acted appropriately in response to Henrie's claims. The District Court found in favor of Appellee.

Appellant appeals the District Court's decision granting summary judgment and entering judgment in Appellant's favor. Specifically, Appellant appeals the District Court's decision to dismiss Appellant's Title VII retaliation claims and Title IX retaliation claims. This Court should reverse this decision. The District Court incorrectly applied standard for summary judgment when it found that a reasonable jury could not conclude she had suffered a materially adverse action. Because Appellant presented evidence that materially adverse actions occurred, the issue should have been presented to a jury rather than resolved on a motion for summary judgment.

## **STATEMENT OF THE ISSUE**

Whether the District Court erred by ruling that in dismissing at summary judgment Appellant's Title VII and Title IX retaliation claims because there was sufficient evidence for a reasonable jury to decide that she had been subjected to materially adverse action in response to her complaints of retaliation and therefore the claims should have been presented to the jury

## STATEMENT OF THE CASE

Appellant Annette Henrie ("Henrie") commenced this action on October 3, 2019, by filing a compliant stating five causes of action: Sexual Harassment in Violation of Title VII, Sex Discrimination in Violation of Title VII, Retaliation in Violation of Title VII, Violation of 42 U.S.C. § 1983, and Violation of Title IX, 20 U.S.C. § 1681-1688. Appendix at 14-19.[1] On August 30, 2021, Appellee Carbon School District ("the District") moved for summary judgment on all five causes of action. App. at 4, Docket Entry No. 13. Henrie submitted her memorandum in opposition of summary judgment on October 12, 2021. *Id*., Docket Entry No. 18. On January 19, 2022, the District Court heard oral arguments on the motion and opposition. App. at 5, Docket Entry No. 24.

On January 31, 2022, the District Court issued a decision granting the District's motion for summary judgment in its entirety, ruling that, in relevant part, a reasonable jury could not conclude that Henrie experience a materially adverse action and therefore could not bring a claim for retaliation under either Title VII or Title IX. App. at 142, 163-166. On March 2, 2022, Henrie timely appealed the portion of the decision dismissing her retaliation claims to the Tenth Circuit Court of Appeals. App. at 168.

---

[1] Record references are to the page number of the accompanying Appendix, accompanied by parallel pinpoint citations, where applicable or necessary, to internal pagination or paragraphs of the documents contained therein.

## STATEMENT OF FACTS

Henrie began her employment with the District in 1985. App. at 9, Complaint at ¶ 12. At the time of her termination, Henrie was employed as a Special Education teacher. *Id*. at ¶ 13. In September 2015, Henrie made a formal complaint with the District regarding Robert Cox ("Cox") and his behavior towards her. App. at 200-204. In this complaint, Henrie stated several issues that had occurred between her and Cox, including: (a) on September 11, 2015, Cox told a teacher to "pretend she hadn't talked with [Henrie] about [her] question and they would discuss it now"; (b) in February 2015, Cox adjusted a day of Henrie's leave; (c) in the spring of 2015, Cox followed Henrie and others to lunch; (d) in the spring of 2014, Cox said "derogatory things" about Henrie in front of two staff members – Cox also was reportedly watching people's time and commenting to others about them working from home; (e) on October 16, 2014, Cox came to Henrie's office red in the face and raised his voice at her because of her use of comp time; (f) after the holiday break in 2014, Cox yelled at Henrie when she brought up the issue of comp time with him; and (g) at the 2012 Opening Special Education meeting, Cox  singled Henrie out for forgetting to put Sped secretary Heather Martines on the agenda. *Id*.

In addition to the complaints above, the letter contained references and language regarding Henrie's fears of retaliation, feelings of being belittled, bullied, and demeaned, and the desire to be separated from him in the workplace. App. at

204. Henrie repeatedly expressed fear of retaliation from Cox in this letter, and not just generalized retaliation, but specifically that the accommodations she requested could result in repercussions directly from Cox or having her duties stripped because she submitted this complaint. *Id*.

After Henrie's September 2015 letter, Cox interfered with her ability to perform her job, even when she was given a new supervisor. App. at 179-182. Even though a new supervisor was assigned, Cox was "still in the background." App. at 175. Other teachers began discussing the incidences that occurred between Henrie and Cox, making Henrie feel threatened and attacked. App. at 208. After her new supervisor had left, Henrie was told Cox would again become her supervisor in direct conflict with her complaint. App. at 177.

On November 20, 2016, Henrie filed a written complaint ("2016 Complaint") with the District against Cox, alleging sex harassment, bullying, terrorizing, and demeaning behavior. App. at 206-208. At that time, Cox was the Special Education and Human Resources Director for the District. App. at 143. Prior to submitting her 2016 Complaint, on November 9, 2016, Henrie met with the District's Superintendent and its Business Administrator to lodge her complaint of sex harassment. *Id*. In her complaint, Henrie informed the District of several offending events, including: (a) Cox looking her up and down more than once; (b) Cox looking down her blouse during a March 2012 Special Education training; and (c) Cox

spreading his legs open and gyrating in his chair in front of her in the Spring of 2012. App. at 142-143. In response, the District stated that it would investigate Henrie's claims. App. at 143.

After submitting this complaint, Henrie began to be excluded from meetings she normally participated in. App. at 182-183. Henrie was also training to do Medicaid billing but was suddenly informed that someone else would take her place in the training. App. at 183-185. Henrie also received a letter that insinuated she was talking badly about Cox and noted that she was in violation of policies that are "Causes for Dismissal." App. at 205. All these actions occurred after Henrie made her complaints and engaged in a protected activity.

The district court rejected Henrie's argument that her September 2015 complaint constituted a protected activity. App. at 163-164. The court reasoned that because she failed to specifically mention "sex or gender" and connect them to her complaints, the District was not on notice the Henrie was making a gender-based complaint. *Id* at 163. As such, the court failed to analyze whether the events that occurred thereafter were materially adverse. *Id*. The court also rejected Henrie's arguments and evidence in support that the events that occurred after her 2016 complaint were materially adverse on the basis that a reasonable jury could not find them as such. App. at. 164-165. The court ultimately dismissed Henrie's retaliation claims. App. at 166.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's grant of summary judgment on Henrie's retaliation claims. First, the court should have found that Henrie's September 2015 complaint letter was a protected activity. Contrary to the district court's conclusion, Henrie's September 2015 complaint constituted a protected activity. The district court reasoned that because her complaint did not "connect sex or gender to her complaints" about Cox and his behavior. However, the court provided no basis for this requirement. Rather, protected activity may include "filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). "Title VII extends protection to those who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Robbins v. Jefferson Cty. Sch. Dist.*, 186 F.3d 1253, 1258 (10th Cir. 1999)(internal quotation omitted). Both the District and the court in its Decision acknowledge that there are "no specific language requirements" when submitting complaints. App. at 139, 163.

The district court stated that Henrie's only evidence in support of her claim that she engaged in a protected activity is "the 2015 Complaint itself." App. at 163. While the complaint itself is perhaps the best evidence, the district court ignored the content of the complaint. Henrie's September 2015 letter specifically mentioned it was a formal complaint against her supervisor, expressed fear of retaliation and loss

of job duties, and described Cox's behavior as "belittling, demeaning and bullying." App. at 200-204. At the very minimum, there is a dispute as to when Henrie engaged in a protected activity first, precluding summary judgment.

The district court also erred when it found that the actions taken by the District were not materially adverse. First, an "adverse action" for purposes of a retaliation under Title VII of the Civil Rights Act of 1964, "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006). The Tenth Circuit construes the phrase "adverse employment action" liberally and does not limit it to "monetary losses in the form of wages or benefits." *Annett v. Univ. of Kan*., 371 F.3d 1233, 1239 (10th Cir. 2004) (quotation marks and citation omitted). Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions. *Id*.

Here, the district court misinterpreted the evidence and failed to apply to appropriate standard to the evidence provided. The district court failed to construe evidentiary disputes in Henrie's favor. It also assigned credibility weight to the evidence, which is not proper under summary judgment.

As such, this Court should reverse the decision.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo, using the same standards applied by the district court. *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg v. Hawker Beechcraft Corp*., 659 F.3d 987, 997 (10th Cir. 2011). If the evidence is "susceptible of different interpretations or inferences by the trier of fact," summary judgment is not appropriate. *Hunt v. Cromartie*, 526 U.S. 541, 552-553 (1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2011). In cases alleging discrimination, the evidence must be evaluated based on the totality of the circumstances. *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 82 (1998).

## <u>ARGUMENT</u>

### I.  HENRIE'S SEPTEMBER 2015 COMPLAINT WAS A PROTECTED ACTIVITY

To make out a prima facie case for retaliation, a plaintiff must demonstrate that "(1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found her employer's subsequent action to be materially adverse; and (3) a causal connection exists between her protected activity and the employer's action." *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009). Protected activity may include a range of activities, including "filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). "Title VII extends protection to those who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Robbins v. Jefferson Cty. Sch. Dist.*, 186 F.3d 1253, 1258 (10th Cir. 1999)(internal quotation omitted). Such claims of retaliation may be asserted "even when the underlying conduct may not constitute a violation of Title VII*." Crumpacker v. Kan. Dep't of Human Res*., 338 F.3d 1163, 1172 (10th Cir. 2003). Both the District and the court in its Decision acknowledge that there are "no specific language requirements" when submitting complaints. App. at 139, 163.

Here, the district court erroneously concluded that the September 2015 complaint was not a protected activity. While the complaint itself is perhaps the best evidence, the district court ignored the content and language of the complaint.

Henrie's September 2015 letter specifically mentioned it was a formal complaint against her supervisor. App. at 200. The letter also specifically mentioned fear of retaliation. *Id*. at 204. She specifically mentioned that she did not want her duties stripped from her because of her complaint against Cox. *Id*. She described Cox's behavior as "belittling, demeaning and bullying." *Id*. This makes her letter more than just commonplace workplace complaints, but a genuine fear stemming from harassment Henrie faced over a period of years. While Henrie did not specifically state that Cox's behavior was motivated by her gender, her language expressing fear of retaliation and loss of job duties should have put the District on notice of the discriminatory conduct and retaliation claims. This letter constitutes a protected activity.

Further, at the very minimum, there is a dispute as to when Henrie engaged in a protected activity first, precluding summary judgment. The district court failed to construe the evidence in the light most favorable to Henrie as the non-moving party. The District failed to put forth evidence to refute that Henrie's letter was a protected activity. Therefore, this Court should reverse this decision and find that summary judgment was not appropriate for determining whether Henrie's September 2015 complaint was a protected activity and allow the claim to be presented to a jury.

## II. HENRIE WAS SUBJECT TO MATERIALLY ADVERSE ACTIONS AS A RESULT OF HER COMPLAINTS

The Supreme Court has held that an "adverse action" for purposes of a retaliation under Title VII of the Civil Rights Act of 1964, "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006). To establish an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. The Tenth Circuit construes the phrase "adverse employment action" liberally and does not limit it to "monetary losses in the form of wages or benefits." *Annett v. Univ. of Kan*., 371 F.3d 1233, 1239 (10th Cir. 2004) (quotation marks and citation omitted). Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions. *Id*.

After Henrie submitted her September 2015 complaint, she was met with adverse actions. After Henrie's September 2015 letter, Cox interfered with her ability to perform her job, even when she was given a new supervisor. App. at 178-181. Even though a new supervisor was assigned, Cox was "still in the background." App. at 175. Henrie was also subject to further humiliation and reputational damage from the District's failure to maintain professionalism and privacy regarding her

12

complaints. Other teachers began discussing the incidences that occurred between Henrie and Cox, making Henrie feel threatened and attacked. App. at 208. The District also failed to show that it would protect her from the conduct complained of and that it took her complaint seriously when, after her new supervisor had left, Henrie was told Cox would again become her supervisor in direct conflict with her complaint. App. at 177.

After her November 2016 complaint, Henrie again faced retaliation. Just two months after submitting her complaint, she received a letter from the superintendent admonishing Henrie for speaking badly about Cox based on the report of "several employees," however, they remained anonymous and Henrie was not informed what they said about her specifically. App. at 205. Although the letter claimed to be a directive rather than a disciplinary measure, it *twice* made references to violations Henrie was alleged to have committed as "Causes for Dismissal." *Id*. Henrie testified she did not believe the District's assertion that it was not a disciplinary letter due to its harsh language. App. at 186. It is also noteworthy that Cox testified that he had never heard from others that Henrie spoke negatively of him to others. App. at 196.

After submitting this complaint, Henrie began to be excluded from meetings she normally participated in. App. at 182-183. Cox verified that she attended these meetings that were meant to be "special education directors' meetings." App. at 194. The district court labeled this a "non-issue," discrediting evidence and failing to

construe evidence in favor of the non-moving party. However, the evidence shows that prior to her complaints, Cox tried to involve Henrie "as much as possible," which included attending specific Sped Director meetings. App. at 194-195. After her complaint, she was no longer invited to do so. App. at 182-183. Henrie was also training to do Medicaid billing but was suddenly informed that someone else would take her place in the training. App. at 183-185. Cox testified she was working with Medicaid before it was taken from her. App.at 194. She made it to the "very end" of her training and was suddenly informed she would not be doing that any longer. App. at 184-185.

Given the timing and the totality of the circumstances, a reasonable jury could find that Henrie was retaliated against for submitting her complaints. Henrie presented substantial evidence disputing the facts alleged by the District. However, the district court failed to consider these facts, supported by evidence, and contrary to the summary judgment standard, failed to construe all evidence in favor of Henrie. Rather, the district court concluded, in the face of all the evidence, that "no reasonable jury would conclude" that Henrie faced retaliation. App. at 164-165. This flies in the face of the applicable standard and ignores all of the evidence submitted by Henrie.

14

## III. SUMMARY JUDGMENT IS NOT APPROPRIATE ON HENRIE'S RETALIATION CLAIMS

As set forth above, both when there are disputes as to material fact, summary judgment is inappropriate. "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg v. Hawker Beechcraft Corp*., 659 F.3d 987, 997 (10th Cir. 2011). If the evidence is "susceptible of different interpretations or inferences by the trier of fact," summary judgment is not appropriate. *Hunt v. Cromartie*, 526 U.S. 541, 552-553 (1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1241 (10th Cir. 2011).

The district court in its Decision made credibility determinations as to the testimonial and documentary evidence submitted by Henrie in violation of this standard. It also failed to construe the evidence in the light most favorable to Henrie as the non-moving party. The September 2015 complaint contains several phrases and events that made it a protected act even without specific language tying it to gender. The retaliation she suffered in totality could be found to be adverse by a reasonable jury. At the very least, the evidence submitted by Henrie created a dispute of fact that should have precluded summary judgment. As such, Henrie's retaliation

claims should not have been dismissed on summary judgment, but rather presented to a jury.

## CONCLUSION

For the reasons set forth herein, this Court should reverse the district court's grant of summary judgment on Henrie's retaliation claims.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant/Plaintiff Annette Henrie respectfully requests oral argument because this case presents important and complex questions of law surrounding retaliation claims, the summary judgment standard to be applied, and has a substantial impact on Appellant's life. Oral argument will further ensure that any shortcomings in counsel's written presentation are revealed and corrected in colloquy with the Court.

Respectfully submitted this 22nd day of June 2022.

　/s/ Andrew W. Stavros＿＿＿＿＿＿
Andrew W. Stavros
*Attorney for Appellant/Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1) and Fed. R. App. P. 29(a)(5), I certify

that this Appellant's Brief:

(a) was prepared using 14-point Times New Roman font;

(b) is proportionately spaced; and

(c) contains 3519 words, excluding parts exempted by Fed. R. App. P. 32(f).

Respectfully submitted this 22nd day of June 2022.

  _/s/ Andrew W. Stavros_____
Andrew W. Stavros
*Attorney for Appellant/Plaintiff*

## **CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;
(2) if required to file additional hardcopies, that the ECF submission is an exact copy of those documents;
(3) the digital submissions have been scanned for viruses with the most recent version of Kaspersky, and according to the program are free from viruses.

Respectfully submitted this 22nd day of June 2022.

  _/s/ Andrew W. Stavros_____
Andrew W. Stavros
*Attorney for Appellant/Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of June 2022, the **APPELLANT'S OPENING BRIEF** was filed and served on all counsel of record via the ECF system.

Respectfully submitted this 22nd day of June 2022.

 /s/ Andrew W. Stavros
Andrew W. Stavros
*Attorney for Appellant/Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of June 2022, the **APPENDIX** was filed and served on all counsel of record via the ECF system.

Respectfully submitted this 21st day of June 2022.

 /s/ Andrew W. Stavros
Andrew W. Stavros
*Attorney for Appellant/Plaintiff*

## <u>ATTACHMENTS</u>

**I.  MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FILED ON JANUARY 31, 2022**

**Memorandum Decision begins on the next page.**

19

FILED
2022 JAN 31 PM 2:15
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **ANNETTE HENRIE,** | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **Plaintiff,** | |
| **vs.** | **Case No. 2:19-CV-00732-DAK-CMR** |
| **CARBON SCHOOL DISTRICT, a political subdivision of the State of Utah,** | **Judge Dale A. Kimball** |
| **Defendant.** | |

This matter is before the court on Defendant Carbon School District's ("District") Fed. R. Civ. P. 56 ("Rule 56") motion for summary judgment on all of Plaintiff Annette Henrie's ("Henrie") claims, which consist of claims of sexual harassment, discrimination and retaliation against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1983 of the Civil Rights Act ("Section 1983"), and Title IX of the Education Amendments Act of 1972 ("Title IX"). The court held a hearing on the motion on January 19, 2022. At the hearing, Henrie was represented by Andrew Fox. The District was represented by Sharia N. Yancey and Jaqualin Friend Peterson. The court has carefully considered the materials submitted by the parties, the arguments made by counsel at the hearing, and the law and facts relating to this matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

*Henrie's 2016 Complaint*

On November 20, 2016, Henrie filed a written complaint ("2016 Complaint") with the District against Robert Cox ("Cox"), alleging sex harassment, bullying, terrorizing, and

demeaning behavior. At that time, Cox was the Sped/Human Resource Director for the District. Prior to submitting her 2016 Complaint, on November 9, 2016, Henrie met with Superintendent Carlsen and Business Administrator Lancaster to lodge her complaint of sex harassment. In that meeting, Henrie was asked to put her complaint in writing, which she did. November 2016 was Henrie's first report to the District expressly claiming sex harassment, and it was also the first time Henrie notified the District of the following events, which Henrie claimed had occurred during the 2011-2012 school year: (a) Cox looking her up and down more than once; (b) Cox looking down her blouse during a March 2012 Sped training; and (c) Cox spreading his legs open and gyrating in his chair in front of her in the spring of 2012.

Additionally, in her 2016 Complaint, Henrie complained that: (a) during the 2012-2013 school year, Cox singled her out during a Sped meeting for forgetting to put Sped secretary Heather Martines on the agenda; (b) during the 2013-2014 school year, Cox discussed the creation of a Sped Coordination position with her if Joan Atwood (or Judy Mainord) retired, but never acted on it once Atwood retired; (c) on October 16, 2014, Cox came to her office red in the face and raised his voice at her because of her use of comp time; and (d) after the holiday break in 2015, Cox yelled at Henrie when she brought up the issue of comp time with him. These latter complaints relating to events during the 2012-2013 school year, and later, were not new to the District in that Henrie had previously raised the same issues in a complaint dated September 13, 2015 ("2015 Formal Complaint").

*The District's Response to Henrie's 2016 Complaint*

Upon receiving Henrie's 2016 Complaint, the District had Lancaster investigate her allegations of sex harassment, bullying, terrorizing, and demeaning behavior. Lancaster interviewed multiple witnesses, including all of the individuals Henrie asked him to speak with,

and he took notes. Thereafter, Lancaster made findings that there was no evidence to support Henrie's claims of sex harassment or terrorizing, demeaning, or bullying behavior by Cox. Lancaster provided Henrie with a copy of his findings.

*Henrie's Complaints and the District's Responses During the 2014-2015 School Year*

In January 2015, Henrie and Salas, principal at Helper Middle School, had a conversation in which Henrie discussed issues she had with Cox and her taking comp time. Approximately two weeks later, Salas had another meeting with Henrie wherein Henrie expressed her desire for a job description, to have an office away from Cox, and to have Cox removed as her supervisor. In this second meeting, Salas encouraged Henrie to speak with Superintendent Carlsen about her concerns. Salas also offered to accompany Henrie when she met with him.

On February 3, 2015, Henrie met with Carlsen and Salas in Salas' office. In the meeting with Salas and Carlsen, Henrie reiterated her desire for a new supervisor, having her office moved away from Cox, and a job description. In turn, Superintended Carlsen said that he would work on writing a job description, changing her supervisor, and physically moving either Henrie's or Cox's office.

On February 9, 2015, Henrie met with Cox and Carlsen to discuss comp time. At no time during these meetings did Henrie mention her gender, sex, or discrimination. The District does not have a comp time policy. After the February 9 meeting, Henrie learned that Cox had taken a day of leave away from her after he entered her time. On March 5, 2015, Carlsen restored Henrie's day of leave and began handling her leave time, a task he (or Maughan) handled for the remainder of Henrie's employment. After the February 9 meeting, the District opened the gifted and talented room for Henrie to remove herself from Cox. Henrie made no further complaints against Cox in the 2014-2015 school year.

*Henrie's Formal Complaint in September 2015*

The following school year, on September 13, 2015, Henrie again complained "in regards to the treatment of me by my immediate supervisor, Mr. Cox." According to Henrie, this complaint ("2015 Formal Complaint") was prompted by the events of September 10, 2015, wherein Cox belittled and bullied her during a Sped meeting by cutting her off from speaking 4 or 5 times in front of her colleagues.

In her 2015 Formal Complaint, in addition to the September 10 event, Henrie told the District of the following incidents involving Cox: (a) on September 11, 2015, Cox purportedly told a teacher to "pretend she hadn't talked with [Henrie] about [her] question and they would discuss it now"; (b) in February 2015, Cox adjusted a day of Henrie's leave; (c) in the spring of 2015, Cox "appeared" to be following Henrie to lunch; (d) in the spring of 2014, Cox purportedly said "derogatory things" about Henrie in front of two staff members – Cox also was reportedly watching people's time and commenting to others about them working from home; (e) on October 16, 2014, Cox allegedly came to Henrie's office red in the face and raised his voice at her because of her use of comp time; (f) after the holiday break in 2014, Cox allegedly yelled at Henrie when she brought up the issue of comp time with him; and (g) at the 2012 Opening Sped meeting, Cox allegedly singled Henrie out for forgetting to put Sped secretary Heather Martines on the agenda. The 2015 Formal Complaint does not mention anything about gender, sex, or discrimination.

*The District's Response to the 2015 Formal Complaint*

Upon receiving Henrie's 2015 Formal Complaint, Carlsen met with Henrie. Carlsen also met with Cox to discuss Henrie's 2015 Formal Complaint. On September 28, 2015, Carlsen responded in writing to confirm the accommodations that he and Henrie had agreed upon,

including making the gifted and talented room available to her anytime she needed to get away from her office, having her continue to direct her leave requests to Carlsen, and committing to work on a job description for her. A day later, Cox gave Carlsen a written response to the 2015 Formal Complaint.

On or around October 23, 2015, Carlsen removed Cox as Henrie's supervisor and appointed former Principal Maughan to be Henrie's new supervisor. Maughan had a master's degree in special education and was an administrator. In addition to transferring Cox's supervisory responsibilities over Henrie to Maughan, all communications went through Maughan. On October 29, 2015, Henrie met with Maughan and Carlsen to finalize her job description.

During either the 2015 Thanksgiving or Christmas break, the District moved Cox away from Henrie's office to Joan Atwood's old office. After Cox was no longer Henrie's supervisor, Henrie had only three meetings with Cox, all in group settings – one at a UPIPs meeting in the spring of 2016, and the other two at Open Sped meetings in both the spring and fall of 2016. In May or June 2016, Maughan left to take a job at Emery School District. Upon Maughan's departure, Carlsen became Henrie's supervisor and he remained her supervisor until Henrie resigned in June 2017.

*Henrie's Request to Have Cox's Email Communications Blocked*

In or around October 11, 2016, Henrie asked Katy Miller from IT to block all of Cox's emails that were sent to her. Prior to this time, Henrie had not asked the District to block Cox's email. Though Katy Miller could not block employee to employee emails, she was able, and to help Henrie did, on or around October 16, 2016, place a filter on all of Cox's emails to Henrie to

"hide" them from her view. Carlsen was aware that Katy Miller had filtered all of Cox's emails. Carlsen instructed Cox not to communicate with Henrie, and Cox complied.

*No Coordinator Position Created*

In the 2013-2014 school year, Cox and Henrie discussed the possibility of a special education coordinator position being created after Joan Atwood or Judy Mainord retired. Henrie was never promised or given the title of special education coordinator. The District never created a special education coordinator position during Henrie's employment. The District did not create the coordinator position due to budgetary constraints.

*Henrie Did Not Take Advantage of the District's Preventive or Corrective Measures*

The District has written policies prohibiting sex discrimination and harassment. The District's nondiscrimination and sexual harassment policies contain reporting procedures on how to file a complaint of sex harassment. Henrie knew of these District policies. Specifically, Henrie knew that she could make a report of sex harassment to the District Human Rights Officer Judy Mainord, instead of Cox or Carlsen. Henrie waited four years to inform the District of the 2011-2012 incidents in which Cox purportedly looked her up and down more than once, looked down her blouse, and gyrated.

*Job Comparators*

Henrie was a teacher on special assignment, also known as "TOSA," or a "special education teacher at the district" or "special education teacher at all schools." Henrie was on a teacher's contract, not an administrator's contract. The District had other employees that were classified as TOSA. Henrie was not qualified to be the special education director or an administrator because she did not have a master's degree. Cox had a master's degree and an Administrator's Certificate. Administrators supervise district personnel. Cox supervised district

personnel. Henrie did not supervise anyone. No other person in the District, including no other male, was doing the work Henrie was doing at the District.

*Henrie's Written Directive*

Henrie received a written directive from Carlsen on January 31, 2017. The written directive expressly states that it is not disciplinary and would not be placed in Henrie's permanent personnel file. The written directive was not placed in Henrie's permanent personnel file. The written directive did not result in any change in Henrie's job duties.

*Henrie Retires*

In early March of 2017, Henrie went to Lancaster to discuss retirement and how she would retire if she chose to do so. On May 15, 2017, Henrie notified the District in writing of her intent to retire. Henrie resigned from Carbon County School District on June 12, 2017. The District allowed Henrie to select her date that she would resign. Henrie took the early retirement incentive from the District. No one asked Henrie to resign or leave her employment with the District.

*Henrie's Charge of Discrimination and Subsequent Lawsuit Against the District*

Henrie filed her EEOC charge of discrimination on September 26, 2017. Henrie filed her lawsuit against the District on October 3, 2019. In this present lawsuit, the District filed a motion for summary judgment, on all of Henrie's claims, on August 30, 2021.

## DISCUSSION

### I. Standard Of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits . . . show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id*. The court "must examine the evidence in the light most favorable to the nonmoving party." *Murphy v. Facet 58, Inc*., 329 F. Supp. 2d 1260, 1266 (D. Utah 2004) (citing *McKenzie v. Mercy Hosp*., 854 F. 2d 365, 367 (10th Cir. 1988)). However,

> If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.

*Celotex Corp v. Catrett*, 477 U.S. 317, 331 (1986) (internal citation omitted).

## II.      Retaliation Under Section 1983

Henrie's Fourth Cause of Action asserts both discrimination and retaliation in violation of the Equal Protection Clause and Section 1983. In the Tenth Circuit, a claim under the Equal Protection Clause for retaliation following complaints of discrimination, or harassment, is not cognizable. *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013). Thus, the court must and does dismiss the retaliation aspect of Henrie's claim brought under Section 1983.

## III.     Sexual Harassment Claims Under Title VII, Title IX, and The Equal Protection Clause

Since there is no evidence of quid pro quo in this case, the court will analyze Henrie's sexual harassment claims, under each statute, from a hostile work environment standpoint. *See Jones v. Needham*, 856 F.3d 1284, 1291 (10th Cir. 2017).

8

### a.   Title VII Sexual Harassment Claim Time Limitation

Under Title VII, a discrimination charge must "be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). In Utah, that time frame is extended to 300 days after the act occurred. *Daniels v. United Parcel Serv.*, 701 F.3d 620, 628 (10th Cir. 2012).

Henrie filed her initial discrimination charge with the EEOC on September 26, 2017. Thus, the 300-day limitation period began on November 30, 2016. None of Cox's purported acts of sexual harassment occurred in this period. Henrie alleges that there were other acts of harassment during this period that continued a pattern of discrimination that had not been resolved by intervening acts. Meaning, Henrie asserts the continuing violation doctrine. However, for the following reasons, the court finds that the continuing violation doctrine does not apply in this case.

### i.   Continuing Violation Doctrine

Through the continuing violation doctrine, a Title VII plaintiff alleging sex harassment based on a hostile work environment may include incidents outside of the statutory time limitation only if such incidents are sufficiently related to events occurring within the time limitations period and thereby constitute a continuing pattern of discrimination. *Hatch v. Davis*, 102 P. 3d 774, 785 (UT App 2004). Meaning, a series of alleged events comprise the same hostile environment where "the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002). It is required that "some (or at least one) of the component acts underlying the claim must occur within the limitation period." *Croy v. Cobe Laboratories, Inc.*, 345 F.3d 1199, 1203 (10th Cir. 2003).

Further, if the employer takes an intervening action between one period of conduct and another period of conduct, the second period is "no longer part of the same hostile work environment claim." *Morgan*, 536 U.S. at 118.

All of Cox's alleged acts of sexual harassment against Henrie occurred in 2012. These allegations are that Cox looked Henrie up and down, looked down her blouse during a Sped training, and spread his legs open and gyrated in his chair in front of her while speaking with her on one occasion. Based on the evidence in this case, these appear to be isolated incidents, with the possible exception of Cox looking Henrie up and down. A few years later, in 2015, Henrie made her first complaint against Cox for facially neutral, workplace issues that had occurred sporadically over several school years. These issues were largely about comp time and job duties.

The District promptly responded to Henrie's reported complaints. In so doing, the District restored the one day of leave that Cox had adjusted, put Superintendent Carlsen in charge of Henrie's leave requests, removed Cox as Henrie's supervisor, and replaced him with Ryan Maughan and later Superintendent Carlsen, opened the gifted and talented room for Henrie to remove herself from Cox, moved Cox to an office further away from Henrie, finalized a job description for Henrie, and filtered Cox's emails for Henrie so that they would be hidden from her view. These are intervening acts that the District took prior to November 30, 2016. These intervening acts by the District therefore cut off that period of conduct, rendering the second period "no longer part of the same hostile work environment claim." *Id*. Even if this were not so, Henrie has also failed to meet the substantive elements of her Title VII harassment claim.

**b. Substantive Title VII Claim**

To overcome summary judgment on her claim that she was subjected to a sexually hostile working environment, Henrie must show: (i) that she was targeted for the harassment because of her sex; (ii) that the workplace was permeated with intimidation, ridicule, or insult; (iii) that it was so severe or pervasive as to alter the terms and conditions of her employment; and (iv) that there is a basis for the District to be held liable for that conduct. *Thoupe v. Univ. of Denver*, 2020 WL 470810, *5 (D. Colo. Jan. 29, 2020), *aff'd by Thoupe v. Univ. of Denver*, 988 F.3d 1243 (10th Cir. 2021). Henrie has failed to meet these elements.

### i. Element I – Targeting Based on Sex

Henrie has made allegations of both sex-based and facially neutral acts. Facially neutral conduct can only "support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020). It is the hostile environment that matters. A jury must be able to reasonably view a gender-neutral act as the product of sex and gender hostility for it to become a gender-based claim. *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2020).

The court finds that the record does not establish a genuine issue here for trial. The 2012 incidents of alleged sexual harassment were isolated and infrequent. There were large gaps of time between these incidents and the facially neutral incidents that Henrie first reported in 2015, making it unreasonable to link the two. The facially neutral issues were also sporadic and could not reasonably be perceived, based on the evidence, to be anything more than regular workplace disputes. At the time, Henrie herself perceived these incidents to be mere conflicts in her working relationship with Cox. It was not until Henrie's 2016 Complaint that she claimed a link between the facially neutral incidents and her sexual harassment allegations. Furthermore, the

facially neutral incidents all have reasonable explanations for them that have nothing to do with

sex or gender. For example, Henrie never got the Sped Coordinator position because the position

was never created – and even if it were created, Henrie did not have the required credentials for

the job. In light of the undisputed evidence, the court finds that a reasonable jury would not

conclude that the gender-neutral incidents in this case were a product of sex or gender hostility.

Thus, Henrie fails the first element of her Title VII sex harassment claim.

### ii.   Elements II & III – Whether Henrie's Work Environment Was Permeated With Intimidation, Ridicule, Or Insult So Severe Or Pervasive As To Alter The Conditions Of Her Employment

In the Tenth Circuit, a sex-based hostile work environment claim can only survive if the

relevant workplace was permeated with discriminatory behavior that was sufficiently severe or

pervasive to create a discriminatorily hostile or abusive working environment. *Williams v. FedEx

Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017). The harassment must be both subjectively and

objectively severe or pervasive, based on the totality of the circumstances. *Morris v. City of

Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012). Title VII "does not establish a general

civility code for the workplace" and "run-of-the-mill boorish, juvenile, or annoying behavior that

is not uncommon in American workplaces is not the stuff of a Title VII hostile work

environment claim." *Id* at 664-65. However, to find harassment under Title VII, the conduct need

not be so severe or pervasive that it seriously affects a plaintiff's psychological well-being. *Nieto

v. Kapoor*, 268 F.3d 1208, 1219 (10th Cir. 2001) (citation omitted).

The parties agree that Henrie subjectively found Cox's behavior to be offensive. The

email evidence from Henrie's husband that stated that the events made Henrie feel "extremely

vulnerable" and like she had "finally been broken" goes to Henrie's subjective view of Cox's

behavior. But, the court finds that a reasonable jury could not find the acts that Henrie

complained of to be *objectively* severe or pervasive. The alleged sexual harassment incidents were isolated events that occurred in 2012, but were not reported by Henrie until 2016. The evidence indicates that only one of those incidents, the contention that Cox looked Henrie up and down, may have occurred more than once. However, when asked about the frequency and timeframe of these incidents, Henrie could not provide any information. In addition, the facially neutral incidents Henrie complained of were few and infrequent. These include a few heated arguments over comp time, some unkind words and interruptions, some work responsibility misunderstandings, and so on. There was another alleged incident that Cox followed Henrie when she met coworkers for lunch. However, Cox testified that he was not following Henrie but rather going to a store at that time, and Lancaster investigated this incident during the sexual harassment investigation and concluded that the timing was most likely coincidental. Put simply, these alleged incidents are all typical of general workplace adversity that would be common in an American workplace. Thus, the court finds that a rational jury could not conclude that this work environment was permeated with discriminatory intimidation, ridicule, and insult.

These workplace incidents also did not alter any of the terms and conditions of Henrie's employment. In response to Henrie's complaints, the District promptly took many actions to resolve her concerns so that Henrie ended up working very much independently from Cox, and she did not even have to interact with him, except for during a couple of group meetings. Further, the letter that Henrie received in January 2017 was not a disciplinary action that altered any condition of Henrie's employment. There is also no evidence in the record that Henrie was unable to perform her job functions. Therefore, based on the record, Henrie fails to meet the second and third elements of her Title VII claim.

### iii.   Element iv – Liability of the District

Under Title VII, if a supervisor's harassment culminates in a "tangible employment action," the employer is strictly liable for sex discrimination, with no defense. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762-63 (1998). When no tangible employment action is taken, a defending employer may raise an affirmative defense, subject to proof by a preponderance of the evidence, by showing: 1) the employer exercised reasonable care to prevent and promptly correct behavior of sexual harassment; and 2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 (10th Cir. 2001). Here, there was no tangible employment action taken, and the District successfully raised an affirmative defense.

### 1. Whether Tangible Employment Action

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington*, 524 U.S. at 761. The record does not support that any tangible employment action against Henrie occurred. Henrie's position at the District was as a TOSA. The record shows that Henrie remained in this position, with no duties removed from her, and remained on the same salary scale until she voluntarily resigned. After October 23, 2015, Cox was not Henrie's supervisor any longer, and he had only minimal interaction with Henrie. What little interaction there was, occurred for the purpose of Cox fulfilling his Sped Director duties. But Cox had no decision-making authority over her employment, did not handle Henrie's time, and eventually did not communicate by email with her.

Although Henrie asserts that Cox had told her she deserved to receive a raise because of the duties she performed, and then did not receive the position Cox had spoken to her about that would have enabled her to receive the raise, this portrayal of events mischaracterizes the evidence on record. Cox had discussed with Henrie the potential for the creation of a Sped Coordinator position, but he had no authority over creating the position. Henrie knew that the position may not be created, but that if it were created Cox was in favor of her receiving it. Regardless, there is no evidence on record that Cox took official action here. The same is true with respect to Judy Mainord's comments to Henrie. Assuming Mainord told Henrie that she deserved a raise, Mainord was not Henrie's supervisor, had no authority, and Mainord did not take any official action.

Finally, the written directive given to Henrie in January 2017 is also not a tangible employment action. The written directive was not disciplinary, but rather an informational letter, written with the intent to avoid misunderstandings and chaos in the workplace. Even though Henrie perceived the letter as a threat of termination, an unrealized threat is not a tangible employment action. Further, because the letter was informational and Carlsen never took official action against Henrie, there is no evidence to support that the directive constituted a significant change in Henrie's benefits, eligibility for promotion, or employment status. Thus, there is not a genuine dispute of material fact as to whether a tangible employment action occurred, and accordingly the District is able to assert an affirmative defense.

### 2.   Whether District Exercised Reasonable Care

The District had, and still has, a policy prohibiting discrimination and sexual harassment, as well as an established reporting mechanism. Henrie knew of both. After having received Henrie's complaints, the District acted in accordance with its policies by being responsive to

Henrie and acting promptly to her complaints. After the facially neutral claims, and prior to the sexual harassment complaint, the District had taken significant action to resolve Henrie's workplace concerns. These actions included removing Cox as Henrie's supervisor, moving Cox's physical office, finalizing Henrie's job description, filtering Cox's emails away from Henrie's view, and instructing Cox not to communicate with Henrie. When Henrie alleged sexual harassment, the District immediately assigned Lancaster to investigate the allegations, which investigation included interviewing all of the witnesses Henrie suggested, and Lancaster writing and presenting his findings.

Henrie now argues that Lancaster's investigation was not reasonable care by the District, but this argument is immaterial based on the record. Lancaster had Human Resources training, had a Human Resources certification, and had training in risk management concerning sex harassment and discrimination. Henrie has provided no evidence or policy that would require more from an investigator. Also, Henrie has provided no evidence to show that Lancaster was required to retrieve signed and written statements from the interviewed witnesses. In addition, the sole fact that Lancaster worked with Cox is not enough to draw a reasonable inference of bias. Furthermore, the undisputed evidence on record shows that after Lancaster presented his findings that he was unable to confirm any of the purported harassment, the District did not alter its actions as a result. The District instead maintained all of the safeguards that had been put in place to address Henrie's concerns. The record clearly supports that the District met its burden on the first prong of its affirmative defense.

### 3.  Whether Henrie Unreasonably Did Not Take Advantage of Preventative of Corrective Opportunities Provided By District

Despite knowing the District's policy and how to report, Henrie waited over four years to inform the District of the purported sexual harassment Henrie experienced in 2012. Henrie

expressed that she was "truly afraid" of Cox and possible retaliation that may occur if she reported. However, before reporting this sexual harassment, Henrie had reported several other workplace issues involving Cox and had successfully gotten the District to respond to her needs. Henrie had experienced only responsiveness from the District, so it appears unreasonable for her to have waited that long to report the sexual harassment allegations. Henrie's other explanation for not reporting earlier was that she did not want to report to the Superintendent because he was a man, although she eventually did decide to report to the, male, Superintendent. Further, Henrie was aware of her ability to report to Judy Mainord, but indicated that she did not feel comfortable doing so because the Superintendent had expressed wanting Lancaster in the meeting with him when Henrie was going to report the sexual harassment. But ungrounded fears like these cannot alleviate an employee's reporting requirement. *See e.g. Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1063 (10th Cir. 2009). Thus, the District has satisfied both prongs of its affirmative defense. Accordingly, Henrie has failed to meet the substantial elements of her Title VII sexual harassment claims.

### c. Title IX and Section 1983 Sexual Harassment Claims Barred by Statute of Limitations

In Utah, federal courts apply a four-year statute of limitations to Title IX and Section 1983 claims. *See Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014); *Whitehat v. College of Eastern Utah*, 111 F. Supp.2d 1161, 1163 (D. Utah 2000) (citing *Arnold v. Duchesne County*, 26 F.3d 982 (10th Cir. 1994). Henrie filed her Complaint in court on October 3, 2019. Applying the four-year statute of limitations to her Title IX and Section 1983 sexual harassment claims, Henrie can only recover under these statutes for unlawful actions that occurred on or after October 3, 2015. Since any of Henrie's claims based on conduct that occurred after her protected activity of making a sexual harassment claim on November 20, 2016

17

come in under a retaliation posture, the relevant time frame in which the court considers Henrie's Title IX and Section 1983 sexual harassment claims is October 3, 2015 to November 20, 2016.

Within this window, the court finds nothing that would objectively qualify as sexual harassment. All of the purported sexual harassment incidents, and most of the facially neutral incidents during the 2014-2015 school year, took place before September 13, 2015. Based on what Henrie had reported by October 3, 2015, the District had already taken many actions to resolve these issues, and by October 23, 2015 the District had removed Cox as Henrie's supervisor. A month later, the District even moved Cox's office further away from Henrie's so that she would not have to interact with him. Within the relevant window, the only complained of incidents are the IEP Pro issues, the PLAAF forms issues, and Cox's UPIP and Open Sped meetings with Henrie in the spring and fall of 2016. The first two incidents have nothing to do with Cox, and the group meetings with Cox are not enough evidence to establish that Henrie was subjected to a hostile work environment. Further, when under oath, Henrie was unable to recall the timeframe or frequency of Cox "always" looking her up and down. Thus, the court concludes that a reasonable jury would find that this unsupported allegation is insufficient, even when considered along with the group meetings, to have objectively created a hostile work environment for Henrie. Accordingly, there are no actions in the limitations window to support a sexual harassment claim under Title IX or Section 1983.

### d.  Substantive Title IX and Section 1983 Sexual Harassment Claims

Even if there were an action within the four-year window that would allow Henrie to move forward with her Title IX and Section 1983 sexual harassment claims, the court would still dismiss them because Henrie failed to meet the substantive elements of these claims.

### i.  Title IX

The Tenth Circuit generally recognizes that Title IX claims are assessed under the same standard as Title VII claims. *Gossett v. Okla. Ex rel. Bd. of Regents for Langston Univ.*, 245 F. 3d 1172, 1176 (10th Cir. 2001). Accordingly, based on the same reasoning put forth while addressing the Title VII claim, the court finds that the District is entitled to summary judgment on Henrie's sexual harassment claim under Title IX.

### ii. Section 1983

To hold the District liable under the Equal Protection Clause, through a Section 1983 claim, Henrie must show a direct causal link between a custom, practice, or policy at the Board level and the deprivation of federal rights. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *see also Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 758 (10th Cir. 2014). Here, that deprivation is Cox's purported workplace sexual harassment. Henrie must also show that the municipal action was taken with deliberate indifference to its known or obvious consequences. *Schneider*, 717 F.3d at 769.

There is no evidence in the record that the District encouraged or condoned unconstitutional behavior through custom, practice, or policy. On the contrary, the undisputed evidence shows that the District promptly responded to Henrie's every complaint, accommodated Henrie's requests, provided Henrie a sexual harassment policy and reporting process that she knew about, and investigated Henrie's sexual harassment complaint immediately after it was reported. The District even minimized Cox's and Henrie's interactions so much that by 2016 the only events in which they had to work together were when they both participated in a few group meetings. As the court previously analyzed, Henrie has also not shown that the investigation of her sexual harassment claim was insufficiently performed, and the court finds that any reasonable jury would conclude, based on the evidence, that the investigation was

19

adequately done. Further, the letter the District send to Henrie was not a disciplinary letter, and the District's "failure" to promote Henrie to a Sped Coordinator position was not because Henrie is female, but because the position was never created and she would not have been qualified for it if it were. The court concludes that a reasonable jury could not find that the District acquiesced in a policy or practice of sex harassment, that the District acted deliberately indifferently, or that the need for more or different action was obvious. Thus, the District is entitled to summary judgment on Henrie's Section 1983 sex harassment claim.

## IV. Sex Discrimination Claims Based on Lack of Pay or Failure to Promote

### a. Prima Facie Case – Failure to Promote

To successfully claim that the District failed to promote her, Henrie must establish a prima facie case demonstrating that: 1) she was a member of a protected class; 2) she applied for and was qualified for the position; 3) despite being qualified she was rejected; and 4) after she was rejected, the position was filled. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). Henrie satisfies the first element because she is female. However, the undisputed evidence is clear that the District never created the Sped Coordinator position while Henrie was employed. Cox had discussed with Henrie the possibility of the position being created, but Cox never promised Henrie the position, did not give her the title, did not have the power to create the position, and the position was indeed never actually created by the District – as Henrie knows. Accordingly, Henrie never applied for this position, since the position did not exist. Henrie has therefore failed to establish a prima facie case that the District failed to promote her.

### b. Prima Facie Case – Unequal Pay Claim

"To establish a prima facie case of pay discrimination, [plaintiff must] adduce evidence tending to show that she occupied a job similar to that of a higher paid male." *Johnson v. Weld*

*Cnty., Colo.*, 594 F.3d 1202, 1215 (10th Cir. 2010) (quotations omitted). If there are no similarly situated co-workers, the employee may be able to make out a claim with evidence that a person outside the protected class would have been paid more for doing the same job. *Almond v. Unified Sch. Dist. #501*, 665 F.3d 1174, 1181 (10th Cir. 2011). In any case, the key is to show that the "employer discriminatorily paid the employee too little for the position" they occupy. *Id*.

Henrie's job at the District was as a TOSA. All TOSAs were women, and Henrie was the highest paid of them. Although Henrie's job responsibilities were unique, that does not elevate her to an administrator. Henrie did not have a master's degree, and therefore she was not qualified to be an administrator. As such, Henrie cannot justify the pay of an administrator or use any administrator as a comparator. Her only comparators are those in TOSA, either actual employees or a hypothetical man in her same TOSA position. Since Henrie was the highest paid TOSA, Henrie has failed to provide evidence that the District discriminatorily paid her too little for her position.

Henrie also claims that the fact that all of the TOSAs were women is itself evidence of widespread discrimination in the District. But the record shows that, at the time of these events, there were female administrators within the District – some of whom were paid higher salaries than male employees. The court concludes there is no genuine dispute of material fact here, and that no reasonable jury would find that Henrie has provided enough evidence to establish a prima facie case of pay discrimination.

### c.  1983 Burden

Again, Henrie cannot bring her Section 1983 claim in the absence of a custom or practice by the District at the Board level, showing it failed to promote women or pay them equally. Here

there is none. In the District, there were female administrators, more female teachers than males, and all the TOSAs were female.

## V.   Retaliation Claims

To make out a prima facie case under Title VII or Title IX, Henrie must demonstrate that: 1) she engaged in protected opposition to discrimination; 2) she suffered a materially adverse employment action; and 3) there is a causal connection between her protected activity and the materially adverse employment action. *Johnson v. City of Murray*, 909 F. Supp. 2d 1265, 1286 (10th Cir. 2013). Henrie fails to establish a prima facie case here.

### a.   First Protected Activity

In Henrie's first formal complaint regarding her treatment from Cox, sent in September 2015, Henrie used language referencing her fears of retaliation, feelings of being belittled, bullied, and demeaned, and the desire to be separated from Cox in the workplace. However, nowhere in the 2015 Complaint, and at no other time previous to November 2016, does Henrie connect sex or gender to her complaints about Cox and his behavior. Although there are no specific language requirements, there is still nothing that would have put the District on notice that Henrie was complaining on the basis of her sex or gender. Henrie needed to have conveyed to the District in some way that she thought Cox's behavior was motivated by her sex or gender. The only evidence that Henrie puts forward to support her claim that she engaged in protected activity in 2015, is the 2015 Complaint itself. There is no genuine dispute of material fact here because the 2015 Complaint speaks for itself. Thus, the court finds that the 2015 Complaint does not put the District on notice that Henrie was concerned that Cox's behavior was motivated by Henrie's sex or gender. Accordingly, Henrie's first protected activity is when she made a specific

complaint of sexual harassment in November 2016. Informally first on November 9, 2016 and then formally on November 20, 2016.

### b.  Whether Materially Adverse Employment Action

To establish a materially adverse employment action, Henrie "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006). In making the determination of a materially adverse action, "it is necessary to separate significant from trivial harms, . . . petty slights, minor annoyances, and simple lack of good manners . . . Otherwise, minor and even trivial employment action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Tilghman v. Kirby*, 662 F. App'x 598, 604 (10th Cir. 2016). The post November 2016 actions that Henrie claims were retaliatory are: 1) losing her ability to do billing for Medicaid; 2) not being invited to attend Spring 2017 Sped Directors' and UPIPs meetings; and 3) her written directive from Carlsen in January 2017. The court now addresses each of these actions in turn.

### i.  Medicaid Billing

The record shows that Henrie was never in charge of Medicaid billing. Her role was to collect the time studies and provide them to the workers tasked with Medicaid billing. Henrie has acknowledged this was her role. The evidence demonstrates only that Henrie wanted the role of Medicaid billing, but that she had never performed the role or had it taken from her. There is no genuine dispute of material fact here, and no reasonable jury would find that Henrie not being given a role that was never her job responsibility to be a materially adverse employment action.

### ii.  Sped Directors' and UPIP Meetings

23

Attending Sped Directors' meetings is part of the job responsibilities of Sped Directors. Henrie was not a Sped Director, so attending these meetings was not part of her job responsibilities. The record demonstrates that Cox asked Henrie to attend one of these meetings on one occasion in order to gather information, but it was not Henrie's duty to regularly attend these meetings. Henrie has corroborated this by indicating that the other meeting attendees were other Sped Directors. Henrie not being invited to this meeting is a non-issue. As for the 2017 UPIP meeting, Cox attempted to invite Henrie through Beverly Martines, since by this time, per Henrie's request, Cox was not to have any contact or communication with Henrie. Regardless, no reasonable jury would conclude that one missed meeting is a materially adverse action.

### iii.  Written Directive

The written directive that Henrie received in 2017 from Carlsen was expressly, by its terms, not disciplinary. Carlsen also testified that the purpose of the directive was to inform Henrie of the allegations without any misunderstandings and to prevent the chaos of whisperings around the District. Carlsen states in the letter that Henrie should disregard the directive if the allegations were not true. Furthermore, the directive was not placed in Henrie's file and it did not cause any change in Henrie's employment status or job duties. Accordingly, this action cannot have been materially adverse.

### c.  Constructive Discharge

The standard for constructive discharge requires that an employee, at summary judgment, produce facts suggesting that "working conditions [were] so difficult that a reasonable person in the employee's position would feel compelled to resign*." Bennett v. Windstream Commc'ns, Inc*., 792 F.3d 1261, 1269 (10th Cir. 2015); *see also Derr v. Gulf Oil Corp*., 796 F.2d 340, 344 (10th Cir. 1986).

24

In Henrie's resignation letter, Henrie stated that she "felt forced out" and like she "had no other option but to retire." However, as reasoned above and based on the record, Henrie has failed to meet the threshold for a retaliation claim – that a materially adverse harm occurred. Because Henrie has failed to meet that threshold, the court concludes that no reasonable jury would find that Henrie met the standard for constructive discharge – that a reasonable person in Henrie's position would have felt compelled to resign.

## CONCLUSION

For the foregoing reasons, the court finds that the Defendant is entitled to summary judgment on all of Plaintiff's claims. Accordingly, the court GRANTS Defendant's motion for summary judgment in its entirety.

DATED this 31st day of January, 2022.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

25

## II.  JUDGMENT IN A CIVIL CASE FILED ON JANUARY 31, 2022

**Judgment begins on next page.**

FILED
2022 JAN 31 PM 2:15
CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **ANNETTE HENRIE,**<br><br>    **Plaintiff,**<br><br>**vs.**<br><br>**CARBON SCHOOL DISTRICT, a political subdivision of the State of Utah,**<br><br>    **Defendant.** | **JUDGMENT IN A CIVIL CASE**<br><br>**Case No. 2:19-CV-00732-DAK-CMR**<br><br>**Judge Dale A. Kimball** |

Based on this court's January 31, 2022 Memorandum Decision and Order, the court

enters judgment in favor of Defendant Carbon School District, a political subdivision of the State

of Utah, on all claims asserted by Plaintiff Annette Henrie. This action is closed.

DATED this 31st day of January, 2022.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge